IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CARVIN WARE                                                                                    PETITIONER

v.                                    NO. 1:18-cv-00069 DPM/PSH

WENDY KELLEY, Director of the                                                     RESPONDENT
Arkansas Department of Correction

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

PLEADINGS. In July of 2002, petitioner Carvin Ware ("Ware") pleaded guilty in an Arkansas state trial court to four counts of rape and two counts of engaging children in sexually explicit conduct for use in a visual or print medium. See Ware v. Norris, 5:06-cv-00035 GH, Docket Entry 8, Exhibit A. He was sentenced to the custody of the Arkansas Department of Correction ("ADC") and came to be assessed as a Level 3 sex offender.

Ware represents that in June of 2016, he was determined to be eligible for release on parole. To date, though, he has not been released.

Ware began the case at bar by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he alleged that ADC officials are improperly denying his release on parole. He appeared to so maintain for two reasons. First, he alleged that his release is being denied on account of his mental and physical impairments in violation of the Americans with Disabilities Act ("ADA"). Second, he alleged that his release is being denied because ADC officials have failed to find him an acceptable place to live. He asked that he be released to an acceptable residence or, alternatively, to a local mental health facility.[1]

---

[1] Ware accompanied his petition with a grievance he filed at the unit level. In the grievance, he alleged, in part, the following:

> ... I'm writing this grievance on Director Wendy Kelley ... for failing to give Level 3 sex offenders places to parole out to. I'm a Level 3 sex offender and I can't find a relative, friend, or halfway house to parole out to because of very strict rules for Level 3 sex offenders being placed on them ... I'm asking Director Wendy Kelley to find a place for Level 3 sex offenders to parole out to ...

See Docket Entry 2 at CM/ECF 4. The grievance was rejected at the unit level. As a part of rejecting the grievance, an ADC official noted that Ware had been sent two applications for transitional living. The rejection of his grievance was affirmed on appeal.

Respondent Wendy Kelley ("Kelley") responded to the petition by filing a motion to dismiss, which was denied. She then filed a response to the petition. In the response, she alleged, in part, the following:

> … Ware's petition fails to demonstrate ADC had any duty to provide housing for sex offenders on parole, and failed to show he applied for a transitional housing program or otherwise met the conditions required for supervised release. … Nor has Ware demonstrated an ADA-qualified disability requiring accommodation in order to transfer to a transitional housing facility or to supervised release. … Thus, as an alternate basis for denial of the petition, any disability discrimination claim should be denied on the basis that Ware has not demonstrated a prima facie ADA claim. …

See Docket Entry 22 at CM/ECF 17-18. Kelley joined her response with an affidavit from John Felts ("Felts"), the Chairman of the Arkansas Parole Board ("Board").

Ware thereafter filed a reply to Kelley's submission. In the reply, Ware represented, inter alia, that there are no transitional housing facilities presently accepting Level 3 sex offenders, and ADC officials have refused to find him an acceptable place to live.

The undersigned has carefully considered the parties' pleadings and exhibits. Having done so, the undersigned is persuaded that Ware's petition warrants no relief and should be dismissed.

LAW. The undersigned begins by noting that "[n]othing in the Constitution requires a State to provide for probation or parole." See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 19 (2008). "But when a State adopts a parole system that applies general standards of eligibility, prisoners justifiably expect that parole will be granted fairly and according to law whenever those standards are met." See Id.

FACTS. In Felt's affidavit, he represents the following, all of which is unrebutted and all of which the undersigned accepts as true:

1. "Upon being deemed eligible for transfer, it is the potential parolee's duty to propose a parole plan meeting the conditions imposed by the Board. ADC has no authority, control or duty to provide or to locate housing for a potential parolee. Instead, employees of the ACC [i.e., Arkansas Department of Community Corrections] located in ADC units, including the Grimes Unit where Ware is incarcerated, investigate and review proposed parole plans." See Docket Entry 22, Exhibit 1 at 2.

2. "Even if approved for transfer to supervised release, the Board in its discretion may deny any inmate's proposed parole plan that is not in strict compliance with rules and regulations promulgated by ACC's Board of Corrections and conditions set by the Parole Board." See Id. at 2-3.

3. "Among other conditions imposed by the Board, all plans submitted by a potential parolee must be in compliance with state law. ... A parole plan must include a proposed residence or living arrangement in compliance with state and federal law." See Id. at 3.

4. "Ware ... was deemed to be eligible for parole and approved to be transferred after a hearing on June 28, 2016." See Id. at 2.

5. "As a convicted sex offender, [he] is required to register under the Sex Offender Registration Act of 1997, Ark. Code Ann. 12-12-901 et seq." See Id. at 3.

6. "Since the date he was determined to be eligible for transfer, [he] has submitted at least 28 proposed parole plans, each of which has been denied upon review and investigation by the ACC. ..." See Id. at 3.

7. "Several of the parole plans submitted by Ware proposed living arrangements in violation of state law governing sex offenders. A registered sex offender, who has been assessed as a Level 3 or Level 4 offender, may not knowingly live or reside within 2,000 feet of any school, public park, youth center, daycare facility, church or other place of worship. See, e.g., Ark. Code Ann. 5-14-128. Further, state law prohibits a paroled sex offender from residing in a residence with any minor as a condition of parole, unless the Board makes a specific finding that the inmate poses no danger to the minors residing in the residence. See Ark. Code Ann. 16-93-709." See Id. at 3-4.

8. "Ware's proposed living arrangements upon transfer, which would violate state law, included the plans reviewed by ACC on June 15, 2017, April 30, 2018, May 11, 2018, July 2, 2018, August 28, 2018, October 5, 2018, December 12, 2018, January 9, 2018, April 30, 2018, May 11, 2018, July 2, 2018, August 28, 2018, October 5, 2018, December 12, 2018, and January 9, 2019. … As to the living arrangements proposed by Ware, ACC investigation revealed the locations of proposed living arrangements to be within 2,000 feet of a school, public park, youth center, daycare facility, and/or a church or other place of worship. … Other of Ware's plans included a residence where a minor child resided. …" See Id. at 4.[2]

9. "Other parole plans submitted by Ware proposed that he be transferred for supervised parole out-of-state, including plans reviewed on August 9, 2016, November 29, 2016, November 21, 2017, and February 5, 2019. … Transfer of a parolee to another state is controlled by the Interstate Compact Act." See Id.

---

[2] Several of the dates identified by Felts are duplicative. He cites the "PPO Reviews and Offender Investigations" in support of his recital of the dates. See Docket Entry 22, Exhibit 1 at CM/ECF 4. The undersigned confesses some difficulty interpreting the "PPO Reviews and Offender Investigations." It is possible that Ware submitted more than one parole plan on the duplicative dates.

10. "ACC's Interstate Compact Office is responsible for processing the initial investigation requests for transfer of parolees from and to other states." See Id.

11. "Ware's proposed plans to be transferred out-of-state were denied either because ACC could not reach the out-of-state resident with whom Ware proposed to live, the out-of-state resident refused Ware, or Ware had no previous connection to the receiving state. …" See Id. at 5.

12. "Other of Ware's proposed parole plans requested transfer to transitional housing, including plans reviewed on February 16, 2017 (Jumpstart Ministries program does not accept sex offenders), July 6, 2018 (Care Center Ministries not ACC-approved and does not accept sex offenders), December 17, 2018 (Health Resources facility closed). …" See Id.

13. "In a grievance submitted to ADC on August 17, 2018, Ware complained that Level 3 Sex Offenders were not being accepted to transitional housing facilities, including a specific facility referenced by Ware, the privately-run OMART rehabilitation facility in Gassville, Arkansas … He claimed this was a violation of the Americans with Disabilities Act … In addition to the grievance attached to his habeas petition, Ware filed another grievance, nearly identical in substance, on the same date. (See … grievance no. GR-18-00764, file-stamped August 17, 2018.) Ware did not appeal the denial of either grievance. …" See Id.

14. "A transitional housing program provides housing for offenders who have been transferred or paroled to ACC by the Parole Board. As noted in response to the grievance, Ware's complaint was rejected, in part, because Ware had been sent applications for ACC-approved transitional housing programs, but he failed to return a

completed application. … Ware may be eligible for transfer to transitional housing dependent upon his submission of a completed application for such program and acceptance of his proposal by both the ACC and the transitional housing program." See Id. at 6.

15. "ACC, not ADC, is in charge of licensing and supervising transitional housing programs, like the OMART facility. As alleged in his grievance, Ware is correct that the OMART facility does not accept Level 3 sex offenders, but several ACC-licensed transitional facilities do, including facilities in Pine Bluff and Little Rock." See Id.

16. "Any transitional living facility determines whether it will accept a parolee, not ADC or ACC. Acceptance by the facility often is limited by the number of beds available." See Id.

17. "Of the remaining proposed parole plans submitted by Ware, they were denied because of mistakes or outright misrepresentations by Ware of the nature of the relationship with the homeowner or property owner, or the private homeowner or property owner refused to accept Ware due to his status as a convicted felon or registered sex offender, or the proposed plan otherwise misstated facts such as a nonexistent address. This included plans reviewed on December 15, 2016 (resident denied knowing Ware and lived at a different address), January 12, 2017 (proposed address did not exist), January 27, 2017 (proposed address was law office; attorney denied knowing Ware), February 2, 2017 (resident not family member as Ware stated; resident convicted felon), April 26, 2017 (private apartment complex does not accept sex offenders or convicted felons), and April 16, 2018 (proposed address motel known for drugs and prostitution. …" See Id. at 6-7.

18. "ADC has no control or authority over whether a homeowner or private property owner accepts Ware's proposed living arrangement." <u>See</u> <u>Id</u>. at 7.

<u>ANALYSIS</u>. Kelley offers several reasons why Ware's petition warrants no relief, several of which have merit. Kelley's most compelling argument, and the reason the undersigned recommends the petition be dismissed, is that Ware has failed to show the ADC has a duty to provide housing for sex offenders on parole and has failed to show he applied for a transitional housing program or otherwise met the conditions required for supervised release.

As Felts' affidavit establishes, the ADC has no responsibility to locate or provide suitable housing for a parolee. Upon being deemed eligible for parole, it is the parolee's responsibility to propose a plan that conforms to state law and satisfies the conditions established by the Board. Strict compliance is understandably required. The receiving entity or party must also agree to the housing arrangement.

The ADC has no responsibility to locate or provide a suitable housing arrangement for Ware in anticipation of his release on parole. He has the responsibility. He submitted approximately twenty-eight proposed parole plans, but the plans were rejected for legitimate, non-discriminatory reasons, <u>e.g.</u>, the proposed residence was within 2,000 feet of a school, public park, youth center, daycare facility, or church or other place of worship; a child lived at the residence; the housing facility does not accept sex offenders; or the plan was incomplete or contained mistakes, misstatements, or outright misrepresentations. There is nothing to support Ware's allegation that his release is being denied on account of his impairments in violation of the ADA. Instead, his release is being denied because he has not submitted an acceptable plan.

Kelley represents that Ware "holds the keys" to his release on parole and has repeatedly failed to use them. See Docket Entry 22 at CM/ECF 13. The undersigned agrees. Once Ware proposes a plan that conforms to state law, satisfies the conditions established by the Board, and is acceptable to the receiving entity or party, the undersigned would anticipate that Ware will be released on parole.

RECOMMENDATION. Given the foregoing, it is recommended that Ware's petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should be denied.

DATED this 9th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE